# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DANIEL CHRISTMANN, | |
| Plaintiff, | Civil Action No. 22-2189 |
| v. | Judge Beryl A. Howell |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

*Pro se* plaintiff Daniel Christmann initiated this action in February 2022 and, after amending his complaint twice, seeks relief from the District of Columbia ("District" or "DC") and the United States Capitol Police ("USCP") for alleged violations of his rights due to their response to the January 6, 2021 attack on the United States Capitol Building.  *See* Not. of Removal, Ex. 1., Superior Court Documents at 1, ECF No. 1-1; Second Am. Compl. ("SAC") at 1–2, ECF No. 12.  While not entirely clear, plaintiff's claims asserted in his *pro se* second amended complaint are construed as alleging violations of his Fourth Amendment rights, under 42 U.S.C. § 1983, as well as Negligence under the First Amendment Assemblies Act ("FAAA"), D.C. Code § 5-331.07(e)(1), and common law claims of "malice interference" and slander.  SAC ¶¶ 35–43.  In bringing each of these patently frivolous claims, plaintiff seeks to transfer blame for his criminal conduct on January 6, 2021 to the District's Mayor and USCP officers, who, together with officers from other law enforcement agencies, were tasked with restoring peace and order and defending the Capitol Building during an unprecedented violent attack that put at risk the safety of thousands of District residents and government employees, including the then Vice President of the United States.

Pending before the Court are two motions to dismiss the second amended complaint, by the District, under Federal Rule of Civil Procedure 12(b)(6), DC's Mot. to Dismiss SAC ("DC's MTD"), ECF No. 16, and by the USCP, under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), or, alternatively, for summary judgment, under Federal Rule of Civil Procedure 56, USCP's Mot. to Dismiss SAC ("USCP's MTD"), ECF No. 23.  For the reasons below, both motions are granted.

I.      **BACKGROUND**

Summarized below are the factual allegations and procedural history in this case.

A.      **Factual Background**

As alleged in his amended complaint, plaintiff traveled with a friend to Washington, D.C., to attend the Stop the Steal rally, on January 6, 2021, but left the rally more than halfway through former President Trump's speech to return to his car.  SAC ¶¶ 25–27.  While sitting in a parking garage in his car, plaintiff received a call from his brother informing him that "people were just waking [sic] into the capitol building and the police are not doing anything."  *Id.* ¶ 27. Plaintiff then made his way to the Capitol Building to "news gather" and "arrived on the outskirts of the building close to Peace Monument around 2:48."  *Id.* ¶ 28.  One minute later, at 2:49 PM, plaintiff received an alert on his cell phone regarding Mayor Bowser's curfew order to be inside by 6 PM.  *Id.*  Plaintiff claims that "[e]veryone lost cell service" because this "mass text [was] sent to everyone at the same time."  *Id.* ¶ 33.

Plaintiff admits that he went up the stairs to the West Terrace, "to find his friend and to news gather," and also that he entered the Capitol Building at 3:00 PM.  *Id.* ¶ 29.  By plaintiff's description, "[t]here were plenty of Police already there . . . quietly watching hordes of protesters come through."  *Id.*  Plaintiff further admits that he "went in a side room to see if he could get out through there, he could not and proceeded to video as thousands of more people kept coming

towards the building." *Id.*  Plaintiff claims that he "avoid[ed] any altercations with officers" and "was in the building for a total of less than 3 minutes and only filmed in the building."  *Id.* ¶ 30. As he left, plaintiff "was scared to go down the stairs, cops were spraying the top of the stairs . . . .  He attempted to make it to the stairs to exit and had to avoid being sprayed by Police."  *Id.*  He eventually left the building and walked back to George Washington University. *Id.* ¶ 31.

Plaintiff admits that he posted videos from January 6, 2021 on Instagram and acknowledges the seriousness of the criminal conduct occurring that day at the Capitol, stating he "[t]hen was worried for 8 months that one day the government would come after him like a terrorist."  *Id.* ¶ 32.  On some date not disclosed in his pleadings, plaintiff was arrested at a location also not disclosed in his pleadings, which arrest he describes as being "swatted and hit vary [sic] hard with the door in the face. His health has not been the same, he should have never been arrested[,] [l]et alone pre-dawn raided by a 35-member swat force."  *Id.*  Plaintiff claims that he "was told by his arresting officer Timothy Donovan that he was arrested on that particular day because it was the day after the J6 Committee hearing," and that the government "chose to blow Daniel [Christmann] in the media, and timed it specifically, to end his political career."  *Id.* ¶ 33.

Review of the public docket of this Court reveals that plaintiff was charged, in July 2021, with violating 18 U.S.C. §§ 1752(a)(1)–(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G), due to his criminal conduct on January 6, 2021, and pleaded guilty in November 2022 to violating 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).  *See United States v. Christmann*, 21-cr-502 (CKK), Statement of Facts at 18, ECF No. 1-1; *id,* Plea Agreement, ECF No. 45. He is awaiting sentencing.

### B.      Procedural Background

Plaintiff Daniel Christmann initiated this action in February 2022 against District of Columbia Mayor Muriel Bowser by filing a complaint in Superior Court.  Superior Court Documents at 1.  In an amended complaint, filed in Superior Court in July 2022, plaintiff dropped the Mayor as a defendant, naming as a defendant only the Office of the Attorney General for the District of Columbia ("OAG"), and asserting federal claims.  *Id.* at 36–59.  OAG removed the case to this Court and moved to dismiss the amended complaint originally filed in Superior Court.  *See generally* Not. of Removal; OAG's Mot. Dismiss, ECF No. 4.  In response, plaintiff requested to amend the complaint and case caption to name the District of Columbia and the USCP as defendants, rather than OAG.  *See* Pl.'s Response to OAG's Mot. Dismiss and Application to Amend Complaint and Caption, ECF No. 6.  Plaintiff's motion to amend the case caption was granted, over defendant's opposition.  Minute Order (Sept. 7, 2022).  Consequently, the OAG was terminated as a defendant in this case, and the District and USCP were added as named defendants.  *Id.*

After entering a guilty plea in his criminal case pending in this Court, plaintiff filed, in January 2023, a second amended complaint against the District and USCP, asserting claims of "malice interference," slander, negligence under the FAAA, and violations of his Fourth Amendment rights under 42 U.S.C. § 1983.  SAC ¶¶ 35–43.[1]  As the factual basis for these claims, plaintiff alleges that the District issued no dispersal order to protestors during the events

---

[1]      Plaintiff's second amended complaint was docketed without written consent from the opposing party or leave to file an amendment granted by this Court, as required by Federal Rule of Civil Procedure 15(a)(2), but no objection has been lodged to consideration of plaintiff's second amended complaint on that procedural basis and, given plaintiff's *pro se* status, the pending motions to dismiss will be considered rather than striking the second amended complaint for improper filing.

on January 6, 2021, *id.* ¶ 30, and that "[i]f he knew it was illegal or that deadly force was being used he would have never entered Capitol Grounds," *id.* ¶ 34.

As relief, plaintiff first "demands the Mayor or District Representative to take into account that the timing of his arrival (2:48pm) to the Capitol Complex and leaving the building, and city. . . . [was] in total Compliance with the Mayors [sic] orders.  There were no other laws that were knowingly broken."[2]  *Id.* ¶ 44.  Plaintiff further requests that the "Attorney General for the District of Columbia demand Judge Colleen Kollar-Kotelly and the Department of Justice dismiss [his criminal] case.  They must notify the Judge and Prosecution that they failed to issue dispersal orders[,] . . . state that my arrest was an unlawful arrest as no dispersal orders were given[,] . . . [a]nd [provide] a $450,000 settlement to deal with the stigma of being labeled a Capitol Storming White Terrorist and having a litany of articles on the internet they can never get rid of[,] [p]lus the cost of curing my new sleep issues from the 6a.m. head trauma."  *Id.* ¶ 46.  Plaintiff then cautions that if the District fails to settle this action he "will continue to seek relief of $5 million."  *Id.* ¶ 45.

In March 2023, the District moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), *see* DC's MTD at 1, and, in April 2023, the USCP moved to dismiss plaintiff's claims, under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), or, in the alternative, for summary judgment under Rule 56, *see* USCP's Mem. Supp. MTD ("USCP's Mem.") at 7–14, ECF No. 23-1.[3]  The defendants' motions are ripe for resolution.

---

[2]    Plaintiff's assertion in his second amended complaint that he did not knowingly violate any laws on January 6, 2021 runs completely counter to his guilty plea entered in his criminal case, and the Statement of Offense entered with his Plea Agreement, which states that he "willfully and knowingly entered the U.S. Capitol Building," that "[a]t the time that he entered, he knew that he did not have permission to do so," and that he "willfully and knowingly paraded, demonstrated, or picketed" while inside the Capitol Building.  *See United States v. Christmann*, 21-cr-502 (CKK), Statement of Offense at 4, ECF No. 44.

[3]    The USCP also moved to dismiss under 12(b)(4) for failure to properly effectuate service, USCP's Mem. at 4–5, but this ground for dismissal need not be considered since dismissal is based on other grounds.

II.      **LEGAL STANDARD**

**A. Federal Rules of Civil Procedure 8 and 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1).  The "short and plain statement" requirement is not stringent.  *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Its purpose is "to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (alteration in original accepted and citation omitted).

At the same time, to survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A claim is facially plausible when the plaintiff pleads facts that are more than "merely consistent with a defendant's liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully." (quotation marks and citation omitted)).  "[A] complaint survives a motion to dismiss even if there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible."  *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (alterations in original accepted and citation omitted).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor.  *Twombly*, 550 U.S. at 555; *see also*

*Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint."  *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice."  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).

## B. Federal Rule of Civil Procedure 12(b)(1)

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'"  *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))).  Absent subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); Fed. R. Civ. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  When considering a motion to dismiss under Rule 12(b)(1), the court must

determine jurisdictional questions by accepting as true all uncontroverted material factual allegations contained in the complaint and "constru[ing] the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged." *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (second alteration in original) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).  The court may also, "[a]s necessary, [] cull additional facts from other parts of the record." *West v. Lynch*, 845 F.3d 1228, 1231 (D.C. Cir. 2017) (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (in deciding subject matter jurisdiction, courts may "consider[] facts developed in the record beyond the complaint")).

### C. *Pro Se* Pleadings

In applying these standards to pleadings filed by *pro se* litigants, the complaint must be considered "in light of all filings, including filings responsive to a motion to dismiss." *Johnson v. District of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019) (quoting *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) (internal quotation marks omitted)). In addition, a *pro se* complaint "'is to be liberally construed' and must be 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted)).  Nonetheless, a *pro se* plaintiff is not excused from complying with applicable procedural rules and "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679); *see also Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011).

### III.    DISCUSSION

Plaintiff's claims against each defendant are fatally flawed for multiple reasons, requiring

dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A.        Plaintiff's Claims are Inherently Frivolous

As an initial matter, before addressing the arguments for dismissal made by the

defendants, plaintiff's claims are subject to dismissal, pursuant to Federal Rule of Civil

Procedure 12(b)(1), on the grounds that they are fundamentally fanciful.  *See Roum v. Bush*, 461

F. Supp. 2d 40, 46–47 (D.D.C. 2006); *see also* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) (providing that

"[n]otwithstanding any filing fee . . . that may have been paid" a "court shall dismiss" a *pro se*

complaint "at any time if the court determines that the action . . . is frivolous or malicious" or

"fails to state a claim on which relief may be granted").  "[F]ederal courts are without power to

entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as

to be absolutely devoid of merit."  *Hagans v. Lavine*, 415 U.S. 528, 536 (1974) (internal

quotation marks and citation omitted).  Complaints lack merit and are generally subject to

dismissal under Rule 12(b)(1) when they transcend characterization as "doubtful or

questionable" and are "essentially fictitious."  *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)

(citations omitted).  Such complaints often allege "bizarre conspiracy theories" or "fantastic

government manipulations."  *Id.* at 330–31; *see Gbedemah v. CIA*, No. 21-cv-438 (DLF), 2022

WL 855020, at *2 (D.D.C. Mar. 17, 2022) ("[A] court can invoke Rule 12(b)(1) to dismiss a

plaintiff's complaint that is 'patently insubstantial, presenting no federal question suitable for

decision.'" (quoting *Walsh v. Comey,* 118 F. Supp. 3d 22, 25 (D.D.C. 2015)).  That is the

apparent nature of plaintiff's allegations here.

After taking multiple attempts to find the "right" defendants, plaintiff makes sweeping

allegations in his second amended complaint that can only be described as frivolous or fanciful.

Plaintiff claims that the actions taken by Mayor Bowser to protect the District and government employees at the Capitol Building were "deceitful, and possibly abusive of process." SAC ¶ 39. He asserts that the "fact that the Mayor hasn't come forward defending the trespass only type January 6-er's[] shows their Curfew Order was deceitful and continues to be negligent by not coming forward." *Id.* Plaintiff further alleges that the Mayor's conduct is made more egregious by unidentified "8 figure settlements for not providing dispersal orders" supposedly entered into by the District. *Id.*

Plaintiff's complaint then spirals into wholly unsupported allegations and conclusions about the catastrophic consequences of defendants' conduct. He claims that he "was denied college entry due to the negative covderage [sic], and will eventually be prevented from running for office in [New York State], and he intends to be compensated." *Id.* ¶ 45. He asserts that a $450,000 settlement is warranted to "deal with the stigma of being labeled a Capitol Storming White Terrorist and having a litany of articles on the internet they can never get rid of." *Id.* ¶ 46. Plaintiff fails properly to allege, however, how defendants may be found liable for these hypothetical harms that he claims he has faced or will face.

This lawsuit is merely an attempt by plaintiff to absolve himself of responsibility for his criminal actions on January 6, 2021, and to blame the District and USCP for the consequences of his own criminal actions. Plaintiff aims to hold the District liable for not setting an earlier time than 6 PM in its curfew order, when an earlier time would supposedly have encouraged him to leave, rather than unlawfully enter, the Capitol Building. He also seeks to blame the USCP for not physically preventing him from entering the Capitol Building, at a time when officers were overwhelmed by the thousands of rioters forcing entry into the building, and were focused on the security of government officials and employees being evacuated as rioters made their way

through the building.  Nonetheless, plaintiff makes the absurd assertion that either the District or USCP infringed upon any right of plaintiff's or broke any duty to him when responding to the emergency situation created by the Capitol Building attack on January 6, 2021.  Notwithstanding that *pro se* complaints, "however inartfully pleaded," are held to less stringent standards than those applied to lawyer-drafted pleadings, *Erickson*, 551 U.S. at 94, plaintiff's complaint contains allegations of liability on behalf of the defendants that are so unrealistic that they deprive this Court of subject matter jurisdiction and thus may be dismissed under Rule 12(b)(1).

      **B.**     **USCP's Motion to Dismiss Must Be Granted**

Set against the absurdity of plaintiff's claims, defendants also provide a number of technical reasons why each claim must be dismissed.  First, plaintiff has failed to state a viable claim entitling him to relief against the USCP.  *See generally* SAC; *see also* Fed. R. Civ. P. 12(b)(6).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face" and to "give the defendant fair notice of what the claim is and the grounds on which it rests." *Twombly*, 550 U.S. at 555–56.  In reviewing a complaint, "[i]t is not the Court's job to wade through pages of incoherent gobbledy-gook in search of a single claim that may have merit." *Shallal v. Gates*, 254 F.R.D. 140, 143 n.6 (D.D.C. 2008).

Plaintiff fails to provide "simple, concise, and direct" allegations of his claim against the USCP.  *See* Fed. R. Civ. P. 8(d).  Indeed, plaintiff's "only factual allegations that name the Capitol Police are that Capitol Police officers watched him enter the Capitol Building and 'said nothing,'" and "in many parts of the complaint, it is impossible to distinguish the allegations against District officials from the allegations against the Capitol Police." USCP's Mem. at 9. Plaintiff alleges that law enforcement did not issue dispersal orders, SAC ¶¶ 18–20, and that police were "spraying the stairs of those coming and going and not making any announcements," *id.* ¶ 30; *see also id.* ¶ 42.  While these allegations could conceivably be against the USCP, as

one of the law enforcement agencies responding to the attack on the Capitol, plaintiff has failed to make clear in his complaint the direct tie between these allegations and the USCP.  This failure supports the granting of the USCP's motion to dismiss under Rule 12(b)(6).  *See Harris v. Holder*, 885 F. Supp. 2d 390, 398 (D.D.C. 2012) (dismissing a complaint that "utter[ly] fail[s] to support its broad assertions of constitutional violations with factual allegations).

Plaintiff also fails to identify how his conclusory allegations against the USCP would amount to any violations of his rights alleged in his complaint.  As noted by the USCP, plaintiff does not explain which factual allegations in his complaint support his various claims, and, although challenging his arrest for his conduct on January 6 as unconstitutional, "does not plead facts to demonstrate why the arrest was unconstitutional, or which of his constitutional rights the arrest violated. . . . [or] even identify the law enforcement agency that he alleges arrested him." USCP's Mem. at 9–10.

Rather than clarify his claims or refute the USCP's grounds for dismissal, plaintiff makes the confusing assertion that his claims are "so absolute the defense is left to disputing this claim with technicalities as they cannot lean on facts."  Pl.'s Opp'n to USCP's MTD ("Pl.'s USCP Opp'n") at 2, ECF No. 26.  He then adds factual allegations that the USCP and other law enforcement officers "engaged in a massive deviation from the normal First Amendment procedures for which they are so well trained, that a blatant indifference towards first amendment protocol was on full display."  *Id*.  Further, according to plaintiff, "[t]he Capitol Police took absolutely no measure to alert the crowd, anywhere near the Plaintiff that this event reached riot status and illegality of the crowds' presence, or even alert protestors to go through metal detectors," failures which he claims resulted in deliberate indifference towards his First Amendment rights. *Id.* at 4. He then shifts his criticism to the US Attorney's Office—which is

not named as a defendant in this case—complaining that "[i]t is baffling that a US Attorney would question how not issuing a dispersal order could fall under a Monell claim for deliberate indifference," *id.* at 10, and that "[t]he US Attorney's office continues to be deliberately indifferent towards first amendment protocol by issuing warrants, and coercing people into taking pleas with non-pertaining and possibly fake photographs of signs they allege protestors took photos of while entering grounds," *id.* at 3.

"To survive a motion to dismiss, the plaintiff must make factual allegations that are neither vague nor conclusory and that cover all the elements that comprise the theory for relief." *ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 215 (D.D.C. 2005) (internal quotation marks and citations omitted).  Plaintiff's conclusory allegations fail meaningfully to establish the elements that would entitle him to relief under any of his purported theories of liability, including violations of his First and Fourth Amendment rights, negligence, "malice interference," and slander.  Plaintiff's complaint does not provide the USCP with notice of the claims asserted and the grounds on which they rest, *see Twombly*, 550 U.S. at 555–56, even taking into account plaintiff's opposition, which fails to clarify any of his claims or make any cognizable legal defense to dismissal, *see generally* Pl.'s USCP Opp'n.  Thus, plaintiff's complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Even if the factual allegations were teased intelligibly together and broadly stretched to construe cognizable legal claims against the USCP that would not warrant dismissal under Rule 12(b)(6) or under Rule 12(b)(1) as being fanciful or frivolous, those claims would still fail to establish this Court's subject matter jurisdiction as a legal matter.  Plaintiff's conclusory assertion that he "has already established more than enough subject matter," Pl.'s USCP Opp'n

at 6, is insufficient to counter the arguments made by the USCP.  Dismissal is thus warranted under Rule 12(b)(1) for several additional reasons.

First, plaintiff's claims for monetary damages for alleged violations of his First and Fourth Amendment rights are construed as constitutional tort claims against a federal agency and, as such, are barred by sovereign immunity.  *See* USCP's Mem. at 10–11.  "The United States, as sovereign, is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent, and that the existence of consent is a prerequisite for jurisdiction.").  "A waiver of sovereign immunity 'cannot be implied, but must be unequivocally expressed,'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)), and absent an express waiver, "sovereign immunity shields the Federal Government and its agencies from suit," *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).

Insofar as plaintiff's tort claims arise from the violation of his civil rights, sovereign immunity bars them.  The "United States simply has not rendered itself liable . . . for constitutional tort claims." *Meyer*, 510 U.S. at 478; *see Mullen v. Bureau of Prisons*, 843 F. Supp. 2d 112, 116 (D.D.C. 2012) ("[T]he United States has not consented to be sued for monetary damages based on a constitutional violation[.]"); *Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 46 (D.D.C. 2017) ("First, the law is well established that Congress has not waived the United States' immunity with respect to tort claims arising under the Constitution."), *aff'd*, No. 17-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018).  "[A] party bringing suit against the United States bears the burden of proving that the government has unequivocally

14

waived its immunity." *Tri-state Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003).

Plaintiff has failed to demonstrate in any of his filings that the USCP has waived its sovereign immunity. He asserts instead that the USCP "double[s] down on the obvious indifferences of that tragic day as they hide behind the protection of sovereign immunity," which he describes as an "unintended vulnerabilit[y] of our justice system." Pl.'s USCP Opp'n at 2–3.[4] Yet, plaintiff fails to cite any legal authority indicating that the USCP should be denied sovereign immunity. His accusation that the USCP is "hiding" behind sovereign immunity simply avoids the fact that this federal government entity has not waived immunity, and thus plaintiff's constitutional tort claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1). *Schindler Elevator Corp. v. Wash. Metro. Area Transit Auth.*, 16 F.4th 294, 296 (D.C. Cir. 2021) (affirming dismissal of complaint against DC Metro Authority for lack of subject matter jurisdiction based on sovereign immunity not excepted or waived).

Second, plaintiff's request for relief is improper in that he seeks a declaratory judgment vacating his criminal conviction. *See* SAC ¶ 46 ("Daniel Christmann seeks relief by, having the Attorney General for the District of Columbia demand Judge Colleen Kollar-Kotelly and the Department of Justice dismiss Daniel's case."). Such a judgment announcing the invalidity of his criminal conviction is barred by *Heck v. Humphrey*, 512 U.S 477, 486 (1993). Plaintiff accuses the USCP of "us[ing] tactics to run out the clock just to corrupt justice by hiding behind very questionable rulings like Heck v. Humphries," Pl.'s USCP Opp'n at 3; *see also id.* at 20–23,

---

[4]   Plaintiff claims that "[t]here is no way the Capitol Police can seek the comforts of Sovereign Immunity while they are absolutely not protected and can be held liable." *Id.* at 19 (citing *Tongol v. Usury*, 575 F. Supp 409 (N.D. Cal. 1983)). As the USCP correctly points out, however, the *Tongol* case cited by plaintiff is "about attorney's fees to prevailing parties under the Emergency Unemployment Compensation Act, which is not even remotely related to constitutional tort claims." USCP's Reply at 3, ECF No. 27.

but *Heck* is binding and dispositive here.  Under *Heck*, a claimant may not bring a constitutional tort claim for "'harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid' unless 'the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'"  *Williams v. Hill*, 74 F.3d 1339, 1340 (D.C. Cir. 1996) (quoting *Heck*, 512 U.S. at 487) (alteration in original).  None of the circumstances that would avoid application of *Heck* apply here, and thus plaintiff's effort to challenge his criminal conviction must fail.

Finally, to the extent plaintiff brings common law tort claims under the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. § 1346, those claims may not be entertained because he has failed to exhaust his administrative remedies.  The FTCA permits a civil suit for "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  The FTCA waives sovereign immunity "'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009) (quoting 28 U.S.C. § 1346(b)(1)).  Thus, the FTCA renders the United States subject to suit for certain—but not all—tort claims.  28 U.S.C. §§ 1346(b)(1), 2674, 2679; *see, e.g., Millbrook v. United States*, 569 U.S. 50, 52 (2013); *Richards v. United States*, 369 U.S. 1, 6 (1962); *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008).

The FTCA requires that a plaintiff "have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).  Accordingly, claimants may not sue the

United States "in federal court until they have exhausted their administrative remedies," and claimants' "fail[ure] to heed that clear statutory command" warrants dismissal of their claims. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see Henderson v. Ratner*, No. 10-5035, 2010 WL 2574175, at *1 (D.C. Cir. June 7, 2010) (per curiam) (affirming dismissal of FTCA claim where "[a]ppellant failed to demonstrate that he exhausted his administrative remedies before filing suit in the district court"); *Abdurrahman v. Engstrom*, 168 F. App'x 445, 445 (D.C. Cir. 2005) (per curiam) (affirming the district court's dismissal of unexhausted FTCA claim "for lack of subject matter jurisdiction"). As the USCP correctly argues, plaintiff did not file an administrative tort claim against the USCP before bringing his suit in federal court. USCP's Mem. at 14. Plaintiff's common law tort claims thus may not be pursued through the FTCA, a fact that further supports dismissal of his suit under Federal Rule of Civil Procedure 12(b)(1).

## C.     DC's Motion to Dismiss Must Also Be Granted

The District seeks dismissal, under Federal Rule of Civil Procedure 12(b)(6), on grounds that plaintiff "cannot maintain this action against the District because he raised no viable municipal liability claim against the District under 42 U.S.C. § 1983 nor under the First Amendment Assemblies Act (FAAA)," and that his "failure to plead viable common law claims and failure to comply with the requirements of D.C. Code § 12-309 precludes him from pursuing any common law claims against the District." DC's MTD at 1. Instead of engaging with the District's legal arguments, plaintiff responds simply by reasserting the facts in his second amended complaint and accusing the District of violating his rights by failing to issue dispersal orders on January 6, 2021, among other conclusory accusations. *See generally* Pl.'s Opp'n to DC's MTD ("Pl.'s DC Opp'n"), ECF No. 21; Pl.'s DC Sur-reply, ECF No. 24.[5] For the reasons

---

[5]     Plaintiff filed two separate oppositions to the District's motion to dismiss, at ECF Nos. 18 and 20, along with an amended Errata, at ECF No. 21, that appears to contain all plaintiff's arguments against dismissal.

below, the District's motion to dismiss must also be granted for the reasons identified by the

District under Rule 12(b)(6).

First, the District argues that plaintiff has failed to plead any facts that show he suffered a

constitutional violation at the hands of a District agent or employee for the purposes of 42 U.S.C.

§ 1983.  DC's Mem. Supp. MTD ("DC's Mem.") at 4–6, ECF No. 16-1.  Although alleging that

he was sprayed with an unknown substance inside the Capitol Building, plaintiff makes no

allegation indicating "that any MPD officer sprayed him" or "that he was seized by any District

employee."  *Id.* at 5.  Rather than clarify any asserted violation of his rights traceable to the

actions of a District agent or employee, plaintiff makes unfounded and unsupported accusations,

such as his assertion that "Metropolitan Police Officers were undercover . . . ."  Pl.'s DC Opp'n

at 7.  Although plaintiff attempts to pursue a claim under *Monell v. New York City Department of

Social Services*, 436 U.S. 658 (1978), alleging that the violations of his rights were caused by a

policy, practice, or custom of the District of Columbia, his conclusory allegations are insufficient

to state a claim, since "a plaintiff must identify a municipal policy, custom, or practice that

caused the plaintiff's alleged constitutional injury."  DC's Mem. at 5 (citing *Bd. of the County

Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997), and *Bush v. District of

Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010)).  Indeed, it is only "when execution of a

government's policy or custom . . . inflicts the injury that the government as an entity is

responsible under § 1983."  *Monell*, 436 U.S. at 694.

To pursue a *Monell* claim such as this, the plaintiff must allege an "affirmative link"

establishing that a municipal policy caused the constitutional violation, such as (1) "the explicit

setting of a policy by the government that violates the Constitution," (2) "[t]he action of a policy

maker within the government," (3) "the adoption through a knowing failure to act by a policy

maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (internal quotation marks and citations omitted).  Here, plaintiff's allegations that he was sprayed by police and that he was led astray by Mayor Bowser's curfew alert do not come anywhere close to establishing the link required to survive a motion to dismiss his claim. Plaintiff asserts that he "was in compliance with the only orders provided by leaving two plus hours before curfew," seemingly implying that his rights have been violated because he was prosecuted for his conduct at the Capitol Building even though he complied with the curfew order.  *See* Pl.'s DC Sur-reply at 8.  What plaintiff fails to acknowledge, however, is that he was prosecuted not for failure to comply with any order from the DC government, but for violating federal laws in his criminal conduct at the Capitol Building on January 6, 2021.  These violations of federal law are wholly unrelated to any supposed compliance with Mayor Bowser's curfew order issued that day, and compliance with the curfew order does not immunize plaintiff from liability for his unrelated criminal acts committed that day.  Plaintiff has thus failed to demonstrate that his claims should not be dismissed for failure to plead allegations that would plausibly state a claim against the District.

Second, the District next argues that plaintiff's claim of negligence, in violation of the FAAA, D.C. Code § 5-331.07(e)(1), fails because this statute only applies to District, not federal, property.  DC's Mem. at 6–8.  Section 5-331.07(e)(1) provides that upon determination that a First Amendment assembly should be dispersed, the MPD "shall issue at least one clearly audible and understandable order to disperse using an amplification system or device," and that

MPD "shall provide the participants a reasonable and adequate time to disperse and a clear and safe route for dispersal."  D.C. Code § 5-331.07(e)(1).  This provision applies on the "streets, sidewalks, and other public ways, and in the parks of the District of Columbia."  D.C. Code §§ 5-331.03; 5-331.07.  As the District points out, the events at issue in plaintiff's complaint happened on the U.S. Capitol grounds, which is federal property secured by the USCP, *see* 40 U.S.C. §§ 5101-5102; D.C. Code § 10-503.19, and not on "streets, sidewalks, and other public ways, and in the parks of the District of Columbia," *see* D.C. Code §§ 5-331.03; 5-331.07.[6]

Lastly, the District argues that plaintiff has failed sufficiently to allege facts supporting any common law claims of "malice interference" and slander.  DC's Mem. at 8.  Again, plaintiff's claims are conclusory and fail to satisfy the standards required to survive dismissal under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff makes conclusory allegations of torts purportedly committed against him, such as that "[t]he Mayor has not come forward clearing the names, and stopping the prosecution of those who only trespassed," SAC at ¶ 36, but fails to provide "factual content to tie them to any District employees' actions for which the District could be held liable," DC's Reply at 4, ECF No. 22.  "Indeed, there is no showing in the Second Amended Complaint that Christmann seeks relief for slander made by a District employee *on* January 6, 2021 or any other identified date, nor any claims that a District employee raided his house in Brooklyn, NY on January 6, 2021 or any other date."  *Id.* (emphasis in original). Plaintiff does not allege with detail the acts taken by District that would constitute slander and

---

[6]    Plaintiff argues that a statement purportedly made by Mayor Bowser during a congressional select committee hearing on January 12, 2022 that "it became clear to me it was now our—the [Capitol] building was our responsibility" subjects the District to liability under the FAAA for actions taken in the course of protecting the Capitol Building from the attack on January 6, 2021.  *See* Pl.'s DC Sur-reply at 2.  Such a statement, describing the Mayor's understanding of a crisis situation during a violent attack on federal government property, does not overwrite statutes that designate the Capitol Building as federal property.

subject the municipality to tortious liability.  Thus, his common law tort claims against defendant

DC must also be dismissed.[7]

## IV.     CONCLUSION AND ORDER

For the foregoing reasons, taking the alleged facts in plaintiff's second amended

complaint as true, plaintiff's claims must be dismissed, under Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  January 20, 2024

_____
**BERYL A. HOWELL**
United States District Judge

---

[7]     The District correctly notes that plaintiff's claims of slander are barred by the one-year statute of
limitations, *see* DC's Mem. at 9, and that his claim for unliquidated damages fails because he did not satisfy the
requirements of D.C. Code § 12-309, which provides that "within six months after the injury or damage was
sustained, the claimant, his agent, or attorney [must] give[] notice in writing to the Mayor of the District of
Columbia of the approximate time, place, cause, and circumstances of the injury of damage."  Although plaintiff
attached to his opposition an acknowledgment letter noting that he notified the Office of Risk Management ("OAR")
of his claims against the District, that letter is dated August 25, 2022, and thus falls short of establishing that his
reporting to the OAR was within the requisite six months of his purported injury, as required by statute.  DC's Reply
at 5.  Plaintiff's failure to comply with § 12-309 is further reason that his common law tort claims against the
District must be dismissed.